1  SEYFARTH SHAW LLP
   Michael J. Burns (SBN 172614)
2  *mburns@seyfarth.com*
   Patty H. Lee (SBN 245192)
3  *plee@seyfarth.com*
   560 Mission Street, Suite 3100
4  San Francisco, California 94105
   Telephone:  (415) 397-2823
5  Facsimile:  (415) 397-8549

6  Attorneys for Defendant
   THE TALBOTS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  SUSAN HANKS,                          )   Case No. C 12-02612 SI
                                          )
13            Plaintiff,                  )   **DEFENDANT THE TALBOTS, INC.'S**
                                          )   **NOTICE OF MOTION AND MOTION**
14      v.                                )   **TO DISMISS PLAINTIFF'S FIRST**
                                          )   **AMENDED COMPLAINT;**
15  TALBOTS  CLASSICS NATIONAL BANK;      )   **MEMORANDUM OF POINTS AND**
    THE TALBOTS, INC.,                    )   **AUTHORITIES IN SUPPORT**
16                                        )
              Defendants.                 )   Date:   August 3, 2012
17                                        )   Time:  9:00 a.m.
                                          )   Place:  Courtroom 10, 19th Floor
18                                        )
                                          )   Complaint Filed:  March 1, 2012
19                                        )
                                          )
20                                        )
                                          )
21  _____)

22        NOTICE IS HEREBY GIVEN that on August 3, 2012 at 9:00 a.m., in Courtroom 10,

23  19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California,

24  Defendant The Talbots, Inc. ("Talbots") will, and hereby does move the Court for an order

25  dismissing the First Amended Complaint ("FAC") filed by Plaintiff Susan Hanks ("Plaintiff")

26  without leave to amend.

27        This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on

28  the grounds that Plaintiff has failed to state sufficient facts to support any claim for relief.

1   Further, leave to amend would be futile because certain of Plaintiff's claims are barred as a

2   matter of law and Plaintiff can state no set of facts to support any claim against Talbots.

3   Accordingly, Talbots requests the Court to dismiss the FAC without leave to amend.

4          This Motion is based on this Notice of Motion, the Memorandum of Points and

5   Authorities, the Request for Judicial Notice, the pleadings and records on file with this Court,

6   and such evidence and argument as may be presented at the hearing on this Motion.

7

8   DATED: June 25, 2012                    SEYFARTH SHAW LLP

9                                           By___/s/ Michael J. Burns_____
                                                  Michael J. Burns
10                                          Attorneys for Defendant
                                            THE TALBOTS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C 12-02612 SI
14591771v.1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................1

II.      LEGAL ARGUMENT ........................................................................1

     A.      Legal Standard ........................................................................1

     B.      Relevant History And Allegations Of The FAC......................2

           1.      Procedural Background................................................2

           2.      The Complaint and Prior Motion to Dismiss..............2

           3.      Plaintiff's First Amended Complaint..........................3

     C.      Plaintiff's Amended Allegations Still Establish The Tradeline's Accuracy And Completeness ........................................................................5

     D.      The FAC Is Also Barred By The Bankruptcy Code ................9

     E.      Plaintiff Lacks A Private Right Of Action For Alleged Inaccuracies ..................10

     F.      No Cause OF Action Exists Under the FCRA For Allegedly Accessing Plaintiff's Credit Report For An Impermissible Purpose ......................................12

     G.      No Cause of Action Exists Under the FCRA for Allegedly Re-aging a Debt By Re-inserting Information On a Consumer's Credit Report ....................14

III.      CONCLUSION.................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Allen v. Calvo*,
   1992 WL 391302 (D. Or. 1992) ............................................................................. 13

*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) .................................................................................. 7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................ 1, 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 1, 8

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) .............................................................................................. 7

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) (Scalia, J., concurring in part and concurring in the judgment) .............. 7

*Dotzler v. Perot*,
   914 F. Supp. 328 (E.D. Mo. 1996), *aff'd,* 124 F.3d 207 (8th Cir. 1997), cert. denied,
   522 U.S. 1148, rehearing denied, 523 U.S. 1103 (1998) .................................. 13, 14

*Gorman v. Wolpoff & Abramson, LLP*,
   552 F.3d 1008 (9th Cir. 2009) ............................................................................... 10

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) ......................................................................... 11, 12

*Gulley v. Markoff & Krasny*,
   664 F.3d 1073 (7th Cir. 2011) ............................................................................... 7

*Hansen v. Morgan*,
   582 F.2d 1214 (9th Cir. 1978) ............................................................................... 12

*Henry v. Saxon Mortg., Inc.*,
   No. CV-10-2551, 2011 WL 5331679 (D. Ariz. Nov. 7, 2011) ............................. 9

*Huey v. Honeywell, Inc.*,
   82 F.3d 327 (9th Cir. 1996) .................................................................................... 7

*In re Miller*,
   No. 01-02004, 2003 WL 25273851 (Bankr. D. Idaho Aug. 15, 2003) .................. 9

*Ippolito v. WNS, Inc.*,
   864 F.2d 440 (7th Cir. 1988), cert. dismissed 490 U.S. 1061 (1989) ................... 13

*Mahajan v. Kumar*,
   No. CV F 06-1728, 2007 WL 1279504 (E.D. Cal. Apr. 30, 2007) ...................... 13

ii

*Marshall v. Swift River Academy, LLC*,
    327 Fed. App. 13 (9th Cir. 2009)................................................................................10

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986)....................................................................................8

*Nelson v. Chase Manhattan Mortgage Corp.*,
    282 F.3d 1057 (9th Cir. 2002) ..........................................................................10, 11

*Rice v. Montgomery Ward & Co.*,
    450 F. Supp. 668 (M.D.N.C. 1978) ..........................................................................13

*Trikas v. Universal Card Servs. Corp.*,
    351 F. Supp. 2d 37 (E.D.N.Y. 2005) ........................................................................13

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ....................................................................................8

*Wachtler v. County of Herkimer*,
    35 F.3d 77 (2d Cir. 1994)..........................................................................................1

*Walls v. Wells Fargo Bank*,
    276 F.3d 502 (9th Cir. 2002) ....................................................................................9

*Williams v. AT&T Wireless Services, Inc.*,
    5 F. Supp. 2d 1142 (W.D. Wash. 1998).............................................................12, 13

**FEDERAL STATUTES**

11 U.S.C., § 301(b) ..........................................................................................................3

15 U.S.C.
    § 1601, *et seq.* ..........................................................................................................2
    § 1681a(d) ................................................................................................................13
    § 1681a(d)(2)(A)(i) .................................................................................................13
    § 1681b(a) ...............................................................................................................12
    § 1681b(a)(3)(A) .....................................................................................................12
    § 1681e......................................................................................................................6
    § 1681i(a)(1)(A) ..................................................................................................5, 11
    § 1681i(a)(2)(A) ......................................................................................................11
    § 1681i(a)(2)(B) ......................................................................................................11
    § 1681n............................................................................................................1, 11, 13
    § 1681o............................................................................................................1, 11, 13
    § 1681s-2(a) .............................................................................................................10
    § 1681s-2(a)(2)(B) ....................................................................................................5
    § 1681s-2(b)(1)(E) ....................................................................................................5
    § 1692, *et seq.* ..........................................................................................................2

**STATE STATUTES**

Cal. Civ. Code § 1788.30(b) ............................................................................................2

iii

**OTHER AUTHORITIES**

*40 Years of Experience with the Fair Credit Reporting Act:*
   *AnFTC Staff Report with Summary of Interpretations*, at p. 68, par. 6, July 2011 ....................6

FTC Opinion Letter from C. Brinckerhoff to M. Lovern, Sr. dated April 24, 1998........................6

FTC Staff Opinion Letter from C. Brinckerhoff to P. McCorkell dated June 3, 1999 ....................6

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### I.      INTRODUCTION

In this action, as amended, Plaintiff Susan Hanks ("Plaintiff") has brought suit against The Talbots, Inc. ("Talbots") and Talbots Classics National Bank ("TCNB") (collectively Defendants), alleging that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681n and 1681o, by re-reporting to consumer credit reporting agencies that one or more credit card accounts belonging to her were "Charged Off" when her account was discharged in bankruptcy.   Talbots[1] denies Plaintiffs' allegations, but take them to be true, as it must, solely for the purposes of this motion to dismiss.  They have no merit and fail to state a claim upon which relief may be granted.

### II.      LEGAL ARGUMENT

#### A.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).  A claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[1] /       This motion is filed on behalf of Talbots, only.  TCNB has not been served with process and is not a party to this case, or motion.  A District Court may properly dismiss the FAC against TCNB even though it has not appeared in the case and joined in this motion.  *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (no error when the District Court *sua sponte* dismissed a complaint against a non-appearing party).

### B.  Relevant History And Allegations Of The FAC

#### 1.  Procedural Background

On March 1, 2012, Plaintiff filed a Complaint in the Superior Court of California, County of Sonoma, against Talbots in the action entitled *Susan Hanks v. The Talbots, Inc. and Does 1-50*, in case number SW251250.

On May 21, 2012, Talbots removed the action to this Court, and filed a motion to dismiss the Complaint on May 29, 2012.  In its motion to dismiss, Talbots apprised Plaintiff and the Court that Plaintiff had sued the wrong entity because Talbots had no involvement with the servicing of Plaintiff's account and credit reporting, and was not a proper defendant in this action.  Talbots further identified that Plaintiff's credit card issuer and servicer is TCNB, a nationally chartered credit card bank regulated by the Office of the Comptroller of Currency; Talbots is TCNB's parent and is a publicly traded company.  (*See* Mot. to Dismiss (Docket No. 8) at 1, fn. 1.)  Plaintiff amended her Complaint to drop Does 1-50 but, rather than just sue TCNB, the correct party that Talbots identified, Plaintiff amended her Complaint to sue both Talbots and TCNB.  Talbots continues to maintain that it is not a proper defendant to this action. This motion to dismiss may be decided without addressing this controversy because the FAC fails to state a claim upon which relief may be granted, regardless of who is named as a defendant.

#### 2.  The Complaint and Prior Motion to Dismiss

Plaintiff's initial Complaint contained counts for alleged violations of the FCRA, Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, Fair Credit Billing Act, 15 U.S.C. § 1601, *et seq.*, California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.30(b), common law defamation, and intentional interference with Plaintiff's prospective economic relations claims.  Talbots argued in its motion to dismiss that each of the counts of Plaintiff's Complaint failed to state a claim upon which relief may be granted.

Among other arguments, Talbots asserted in its motion to dismiss that its alleged re-furnishing of information to the credit reporting agencies was accurate and complete under Plaintiff's own allegations.  In her initial Complaint, Plaintiff alleged that Talbots charged off the

2

1  account in or about June of 2010 *before* Plaintiff received a bankruptcy discharge on August 3,

2  2010.  (*See* Request for Judicial Notice ("RJN"), Ex. A, Comp. at ¶¶ 8, 9.)  Therefore, Talbots

3  argued, that even if it had re-reported the charge off information as alleged, that additive

4  information to Plaintiff's bankruptcy discharge could not have caused the tradeline to become

5  inaccurate.  In fact, the tradeline would be incomplete without that information, which according

6  to the allegations of Plaintiff's initial Complaint was the last status of the account with the

7  furnisher before the account obligation was discharged in bankruptcy.

8  ### 3.   Plaintiff's First Amended Complaint

9  On June 8, 2012, Plaintiff responded to Talbots' motion to dismiss by filing an opposition

10  brief (Docket No. 14) and the FAC (Docket No. 13.)  Plaintiff contended in her brief that she

11  was contemporaneously filing an amended complaint which withdrew all of her causes of action

12  except her FCRA claim, and that cured all of Talbots' claimed defects with her Complaint's

13  FCRA allegations.  (*See* Docket No. 14, at 1-2.)

14  Plaintiff's FAC no longer alleges that the re-reporting of information occurred in June

15  2010, or that Plaintiff received a bankruptcy discharge *afterwards* on August 3, 2010.  Instead,

16  the FAC pleads that Plaintiff's January 22, 2012 Experian credit report "reflected that Defendant

17  re-inserted the 'Charge Off' on the Credit Report Trade Line sometime during 01/2012."  (FAC

18  at ¶ 12.)  Plaintiff claims in the FAC that on April 22, 2010, she filed a voluntary Chapter 7

19  bankruptcy petition in the United States Bankruptcy Court for the Northern District of California,

20  Santa Rosa Division, Case No. 10-11459.  (FAC at ¶ 6.)  She asserts that, on the filing date, the

21  Order for Relief issued in her bankruptcy case on April 22, 2010, in accordance with Title 11,

22  U.S.C., § 301(b).  (*Id*.)  Plaintiff further alleges that "[t]he Bankruptcy was successfully

23  concluded and the debts as of the Petition Date were discharged including the accounts alleged

24  hereafter."  (FAC at ¶ 7.)  Plaintiff omits her prior allegation from her Complaint that her

25  Chapter 7 bankruptcy discharge was entered on August 3, 2010.

26  //

27  //

28

3

1    Plaintiff asserts that "[s]ometime after the Defendant was notified of the Plaintiff's

2  bankruptcy case, Defendant improperly reported to credit reporting agencies that one or more

3  credit accounts belonging to Plaintiff where (sic) 'Charged Off', when in fact the account had

4  been included in Plaintiff's Bankruptcy and Defendants were enjoined from reporting said

5  'Charge Off' on Plaintiffs credit report." (*Id.* at ¶ 8.)  The FAC refers to these alleged accounts

6  as the "Discharged Accounts."  (*Id.*)

7    Plaintiff claims that she sent letters "to the three major credit reporting agencies via

8  certified mail . . . disputing the inaccurate reporting on the Discharged Accounts and requested

9  that the errors be fixed immediately."  (*Id.* at ¶ 9.)  Plaintiff asserts that on October 7, 2011,

10 "Plaintiff received Experian's reinvestigation report stating that Defendant corrected the

11 inaccurate reporting of a 'Charge Off' on the Accounts" and that "the re-investigation report

12 showed the trade line account history to be corrected, and the trade line account history

13 accurately stopped reporting any and all information after 03/2011."  (*Id.* at ¶ 10.)

14   Plaintiff alleges that "[b]y correcting the inaccurate 'Charge Offs' on Plaintiffs credit

15 report the Defendant (sic) by their own admission acknowledged the inaccuracy of the 'Charge

16 Off' status."  (*Id.* ¶ 11.)  She claims, "[h]owever, [that] on 1/22/2012, Plaintiff once again pulled

17 her Experian credit report.  The credit report reflected Defendant reinserted the 'Charge Off' on

18 the Credit Report trade line sometime during 01/2012."  (*Id.* at ¶ 12.)  Plaintiff also adds a new

19 allegation that she did not allege in her Complaint, that "Defendant also reported a $329.00

20 balance owed on the trade line account history for" each of the months from April 2010 through

21 December 2011.  (*Id.*)

22   Plaintiff asserts that "Defendants violated the FCRA because they had no legal basis to

23 access and change Plaintiff's Credit Report since the debt was discharged in the bankruptcy and

24 the Formal Dispute Process had already been fully executed."  (*Id.* at ¶ 13.)  Plaintiff claims

25 "[t]here was no debtor-creditor relationship at the time the defendant accessed the credit report.

26 Thus, Defendant accessed Plaintiff's credit report for an impermissible purpose."  (*Id.*)  Plaintiff

27 further claims that "Defendant also violated the FCRA because the Defendants had no legal right

28

4

1  or legal basis to re-report knowingly false information on Plaintiffs Credit Report, especially

2  since the formal dispute process had been fully executed."  (*Id*. at ¶ 14.)  And Plaintiff alleges

3  that "Defendants further violated the FCRA because they have 're-aged' the debt by re-inserting

4  the information on the consumer's credit report."  (*Id*. at ¶ 15.)

5          Plaintiff asserts that these alleged violations were willful, knowing, malicious and illegal

6  under the FCRA.  (*Id*. at ¶¶ 16-19.)  Specifically, Plaintiff pleads that Defendants' alleged

7  "receipt of the formal dispute letter and receipt of the discharge order constituted notice pursuant

8  to Section 1681i(a)(2) of Title 15 of the United States Code [FCRA] that all debts with reported

9  'Charge Offs' and delinquencies after the bankruptcy petition date should have been removed

10  from the Plaintiffs credit report."  (*Id*. at ¶ 22.)  Plaintiff further pleads that "[a]s a result of

11  Plaintiff's formal dispute sent to the credit reporting agencies, Defendant had an affirmative duty

12  to conduct a proper reinvestigation and to permanently correct all erroneous consumer credit

13  information and to not re-report inaccurate information."  (*Id*. at ¶ 20.)  Plaintiff alleges that

14  "Defendant willfully, intentionally and without any just cause failed to comply with this duty."

15  (*Id*.)

16          Talbots filed a notice of withdrawal of its motion to dismiss on June 14, 2012, in light of

17  Plaintiff's FAC.  This motion to dismiss followed.

18          **C.     Plaintiff's Amended Allegations Still Establish The Tradeline's**
                  **Accuracy And Completeness**
19

20          Plaintiff alleges that Defendants "violated the FCRA because the Defendants had no legal

21  right or legal basis to re-report knowingly false information on Plaintiff's Credit Report,

22  especially since the formal dispute process had been fully executed."  (*Id*. at ¶ 14.)  But Plaintiff

23  recognizes that furnishers of information have a legal duty to comply with the FCRA's

24  requirements.

25          The FCRA does not simply impose a duty upon furnishers of information to provide

26  accurate information, it requires that furnishers must correct and update information by

27  furnishing "<u>complete and accurate</u>" information. 15 U.S.C. § 1681s-2(a)(2)(B) (emphasis added).

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C 12-02612 SI
14591771v.1

1   Further, the FCRA imposes a duty upon furnishers who have received a consumer's dispute from

2   a credit reporting agency pursuant to 15 U.S.C. § 1681i(a)(1)(A), to conduct an investigation and

3   "if an item of information disputed by a consumer is found to be <u>inaccurate or incomplete</u> . . .

4   [to] promptly-- (i) modify that item of information; (ii) delete that item of information; or (iii)

5   permanently block the reporting of that item of information."  15 U.S.C. § 1681s-2(b)(1)(E)

6   (emphasis added).

7          Plaintiff does not allege in the FAC, and cannot allege in good faith, that her account's

8   tradeline displayed only the charge off information and not also the bankruptcy information.  An

9   account tradeline which displays both that an account was charged off by the furnisher and that it

10  was discharged by a bankruptcy court is both accurate and complete when the creditor has

11  charged off the account before the debtor has obtained an order discharging the debt in

12  bankruptcy.  Under that sequence of events, the information is additive; the account's last status

13  with the creditor is charged off, prior to being discharged by a court in bankruptcy:

> A consumer report may include an account that was discharged in bankruptcy (as
> well as the bankruptcy itself), as long as it reports a zero balance to reflect the fact
> that the consumer is no longer liable for the discharged debt . . . .  It is not a
> reasonable procedure to label an account that has been discharged in bankruptcy
> as "charged off as bad debt" if the account was open and not charged off when the
> consumer filed bankruptcy.  Such a designation would be inaccurate or
> misleading, as it would indicate that the creditor had written off the account at the
> time of bankruptcy when it had not in fact done so.  However, a creditor or CRA
> [Credit Reporting Agency] is not prohibited from reporting that at account has
> been charged off when it in fact was charged off.

19  (*See* Index of Federal Trade Commission Authorities in support of Talbot's Motion to Dismiss

20  Plaintiff's First Amended Complaint ("Index"), Ex. A, *40 Years of Experience with the Fair*

21  *Credit Reporting Act:  An FTC Staff Report with Summary of Interpretations*, at p. 68, par. 6

22  (Section 607-Compliance Procedures, 15 U.S.C. 1681e), July 2011, *available at*

23  www.ftc.gov/os/2011/07/110720fcrareport.pdf. )

24         The FTC Staff Report cites to two earlier FTC Staff Opinion letters.  The one from

25  June 3, 1999 opines that the FCRA does not prohibit a creditor from reporting that its account

26  was charged off whether before or after the filing of a bankruptcy, so long as the creditor has, in

27

28

6

1   fact, charged off the account.  (*See* Index, Ex. B, FTC Staff Opinion Letter from C. Brinckerhoff

2   to P. McCorkell dated June 3, 1999, *available at* www.ftc.gov/os/statutes/fcra/mccorkel.htm .)

3         The FTC Staff Reports also cites to an earlier FTC Opinion Letter from C. Brinckerhoff

4   to M. Lovern, Sr. dated April 24, 1998, *available at* www.ftc.gov/statutes/fcra/lovern51.shtm

5   (*See* Index, Ex. C.)  It opines that it was not a reasonable procedure for a credit reporting agency

6   to label an account that has been discharged in bankruptcy as a charged off bad debt if the

7   account was not open and charged off when the consumer filed for bankruptcy  "[s]uch a

8   designation would be inaccurate or misleading, because it would indicate that the creditor had

9   written off the account at the time of bankruptcy when it had not in fact done so."

10         As an opinion of the full FTC, the FTC Staff Report is entitled to *Chevron* deference.

11   See *Christensen v. Harris Cnty.*, 529 U.S. 576, 591 (2000) (Scalia, J., concurring in part and

12   concurring in the judgment) (stating that, while an interpretation of a staff member may not be

13   entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467

14   U.S. 837, 844 (1984), the position of the agency itself such be entitled to such deference).[2]

15         The present situation is the one contemplated by the FTC that is lawful:  Plaintiff's

16   timeline from her initial Complaint established that the creditor charged off the account as a bad

17   debt in or about June of 2010, then the debtor obtained a discharge in bankruptcy on August 3,

18   2010.  (*See* RJN, Ex. A, Comp. at ¶¶ 8, 9.)  Plaintiff withdrew these allegations by not repeating

19   them in the FAC.  Factual assertions in pleadings are considered judicial admissions, but "[w]hen

20   a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial

21   admission . . . ."  *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996); *see also American

22   Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Nonetheless, Plaintiff's

23

24

---

25       [2] /    FTC staff opinion letters do not receive *Chevron* deference, "[b]ut the
    commentary is entitled to respectful consideration."  *Gulley v. Markoff & Krasny*, 664 F.3d

26   1073, 1074-75 (7th Cir. 2011) (internal quotation marks and citation omitted).  Here, however,
    because the full FTC's Staff Report adopts its prior opinion letters, and the Staff Report is

27   entitled to *Chevron* deference, the staff opinion letters are entitled to *Chevron* deference, as
    adopted.

28

1   attempted dodge does not change anything because the relevant timeline can still be discerned

2   from the FAC's allegations and the Court's taking appropriate judicial notice.

3            To establish an FCRA violation under the above authorities, Plaintiff must affirmatively

4   plead that Defendants charged off the account after learning of the August 3, 2010 entry of

5   Plaintiff's Chapter 7 bankruptcy discharge, and then reported the charge off to the credit

6   reporting agencies.  While Plaintiff tried to avoid pleading the date that Defendants charged off

7   the account this time around, the FAC still gives her away.  She pleads that "the trade line

8   account history accurately stopped reporting any and all negative information after 03/2010."

9   (FAC at ¶ 10.)  Plaintiff acknowledges in the FAC that the alleged inaccurate "Charge Off"

10  information first appeared in her credit reports prior to March of 2010.  *Ergo*, Defendants

11  allegedly must have charged off Plaintiff's account prior to March of 2010, even under her

12  amended allegations.

13           The Court can take judicial notice of the August 3, 2010 entry date of Plaintiff's Chapter

14  7 bankruptcy discharge, despite Plaintiff's withdrawal of that allegation.  *See United States ex*

15  *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)

16  (noting that the court "may take notice of proceedings in other courts, both within and without

17  the federal judicial system, if those proceedings have a direct relation to matters at issue");

18  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (holding that the district

19  court properly took judicial notice of documents from a prior proceeding when considering a

20  motion to dismiss).  (*See* Request for Judicial Notice, Ex. B.)

21           To muddy the waters, Plaintiff alleges that Defendants "reinserted the 'Charge Off' on

22  the Credit Report Trade Line sometime during 01/2012."  (*Id*. at ¶ 12.)  But that date is entirely

23  irrelevant for FCRA purposes; the charge off information could lawfully be reinserted into

24  Plaintiff's credit report in 2012 following the entry of Plaintiff's bankruptcy discharge order,

25  because under the above authorities the charge off, having occurred prior to Plaintiff's obtaining

26  a bankruptcy discharge order, would accurately and completely reflect that Plaintiff's account

27  was charged off by the creditor prior to being discharged by the Bankruptcy Court.

28

8

1    The FAC fails to state a plausible claim for relief under Rule 8(a) as required by the

2  Supreme Court in *Iqbal* and *Twombly*.  Further, Plaintiff's allegations establish that this defect

3  cannot be cured by amendment.  Therefore, the FAC should be dismissed without leave to

4  amend.

5    **D.    The FAC Is Also Barred By The Bankruptcy Code**

6    In the FAC, Plaintiff alleges that "[s]ometime after the Defendant was notified of the

7  Plaintiff's bankruptcy case, Defendant improperly reported to credit reporting agencies that one

8  or more credit accounts belonging to Plaintiff where (sic) 'Charged Off', when in fact the

9  account had been included in Plaintiff's Bankruptcy and <u>Defendants were enjoined from

10  reporting said 'Charge Off' on Plaintiffs credit report</u>."  (*Id*. at ¶ 8 ) (emphasis added.)

11    This FCRA claim may not be maintained because it "necessarily entail[s] bankruptcy-

12  laden determinations."  *Walls v. Wells Fargo Bank*, 276 F.3d 502, 510 (9th Cir. 2002).  The

13  Ninth Circuit "in *Walls* held that a claim under § 1692f of the FDCPA could not be made

14  because it turned on whether § 524 of the Bankruptcy Code was violated."  *Henry v. Saxon

15  Mortg., Inc.*, No. CV-10-2551, 2011 WL 5331679, at *2-3 (D. Ariz. Nov. 7, 2011).  The Ninth

16  Circuit determined in *Walls* that unfair debt collection practice and other claims that are based

17  upon alleged violations of the bankruptcy discharge injunction are governed *exclusively* by

18  contempt proceedings under the Bankruptcy Code.  Indeed, the Ninth Circuit held the "remedy

19  for violation of § 524 no matter how cast lies in the Bankruptcy Code."  276 F.3d at 511.  In *In

20  re Miller*, No. 01-02004, 2003 WL 25273851 (Bankr. D. Idaho Aug. 15, 2003), the Bankruptcy

21  Court relied upon the Ninth Circuit's decision in *Walls* to observe that "[p]ossible violations of

22  the FCRA are not actionable as violations of § 524 <u>unless the false reporting was done to extract

23  payment or collect a debt</u>."  *Id*. at *3 (emphasis added).

24    In her initial Complaint, Plaintiff alleged that Talbots falsely represented her debt as

25  charged off "to coerce the Plaintiff into paying a debt that had been discharged in bankruptcy in

26  order to 'clear' the negative information from [Plaintiff's] credit history."  (RJN, Ex. A, Comp.

27  at ¶¶ 30, 37.)  In another apparent attempt to avoid Talbots' motion to dismiss, Plaintiff withdrew

28

9

1    this allegation in her FAC.  But Plaintiff cannot have her cake and eat it too.  Either Defendants'

2    alleged re-reporting was done to extract payment or collect a debt, in which case her FCRA

3    claim is barred by the Bankruptcy Code under *Walls* and *Miller*, or it did not violate the

4    discharge injunction because it was not done to extract payment or collect a debt.  Either way,

5    Plaintiff's claim that Defendants violated the FCRA by violating the bankruptcy discharge

6    injunction fails to state a claim upon which relief may be granted.  It should be dismissed without

7    leave to amend.

8         **E.    Plaintiff Lacks A Private Right Of Action For Alleged**
              **Inaccuracies**
9

10            Plaintiff adds a new allegation in the FAC that she did not plead in her original

11   Complaint, that "Defendant also reported a $329.00 balance owed on the trade line account

12   history for" each of the months from April 2010 through December 2011.  (FAC at ¶ 12.)

13   Plaintiff does not allege that she disputed the tradeline's accuracy in this regard with the credit

14   reporting agencies.  Therefore, no private right of action exists for this allegation.

15            Defendants' duties to provide accurate and complete information and to correct

16   inaccurate and incomplete information derive from Section 1681s-2(a) of the FCRA, Title 15,

17   U.S.C., entitled "[d]uty of furnishers of information to provide accurate information".[3]  No

18   private right of action exists for alleged violations of Section 1681s-2(a) duties.  *Marshall v.*

19   *Swift River Academy, LLC*, 327 Fed. App. 13, 14-15 (9th Cir. 2009) ("we have at least twice

20   specifically held that consumers may not maintain an action for violation of Section 1681s-2(a)")

21   (citing *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1014 (9th Cir. 2009) ("Duties

22   _____

23            [3] /    Specifically, Section 1681s-2(a)(1)(A) prohibits furnishers from "furnish[ing] any
     information relating to a consumer to any consumer reporting agency if the person knows or has
     reasonable cause to believe that the information is inaccurate."  Section 1681s-2(a)(1)(B)
24   prohibits furnishers from "furnish[ing] information relating to a consumer to any consumer
     reporting agency if-- (i) the person has been notified by the consumer, at the address specified
25   for such notices, that specific information is inaccurate; and (ii) the information is, in fact, in
     accurate."  And Section 1681s-2(a)(3)(B) requires that a furnisher who "has furnished to a
26   consumer reporting agency information that the person determines is not complete or accurate,
     shall promptly notify the consumer reporting agency of that determination and provide to the
27   agency" corrected or complete information, "and shall not thereafter furnish to the agency any of
     the information that remains not complete or accurate."

28
                                                    10

1   imposed on furnishers under [Section 1681s-2(a)] are enforceable only by federal or state

2   agencies."); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir.

3   2002) ("Congress limited the enforcement of the duties imposed by § 1681s-2(a) to

4   governmental bodies.")).

5         Section 1681s-2(b) of the FCRA, Title 15, U.S.C., on the other hand, imposes a duty

6   upon those who furnish information to credit reporting agencies to conduct an investigation upon

7   notice from a credit reporting agency that a consumer has disputed the accuracy or completeness

8   of their reported information and to report the results. "The FCRA expressly creates a private

9   right of action for willful or negligent noncompliance with its requirements." *Gorman*, 584 F.3d

10  at 1154; *see* 15 U.S.C. §§ 1681n; 1681o. The consumer must first dispute the tradeline with the

11  credit reporting agency. 15 U.S.C. § 1681i(a)(1)(A). "To trigger a furnisher's duty to

12  investigate, the furnisher must receive notice of the dispute from a credit reporting agency, not

13  from a consumer directly." *Gorman*, 584 F.3d at 1154; *Nelson*, 282 F.3d at 1060 (citing 15

14  U.S.C. § 1681i(a)(2)(A) & (B)).

15        The FCRA imposes a duty upon a furnisher to investigate only the <u>specific</u> dispute that a

16  credit reporting agency has notified the furnisher of. *Gorman v. Wolpoff & Abramson, LLP*, 584

17  F.3d 1147, 1157 (9th Cir. 2009):

18              [A] furnisher's obligation to conduct a reasonable investigation under § 1681s-
19              2(b)(1)(A) arises when it receives a notice of dispute from a [credit reporting
                agency]. Such notice must include "all relevant information regarding the dispute
20              that the [credit reporting agency] has received from the consumer." §
                1681i(a)(2)(A). It is from this notice that the furnisher learns the nature of the
21              consumer's challenge to the reported debt, and it is the receipt of this notice that
                gives rise to the furnisher's obligation to conduct a reasonable investigation. The
22              pertinent question is thus whether the furnisher's procedures were reasonable in
                light of what it learned about the nature of the dispute from the description in the
23              [credit reporting agency's] notice of dispute.

24        Plaintiff does not allege that she disputed with a credit reporting agency that Defendants

25  allegedly "reported a $329.00 balance owed on the trade line history for" the months of April

26  2010 through December 2011 (FAC at ¶ 12), or that a credit reporting agency notified

27  Defendants to investigate such a dispute. Accordingly, no private right of action exists for this

28

                                              11

1   FCRA claim.  Plaintiff has failed to state a claim upon which relief may be granted with respect

2   to this allegation, and it should be dismissed.

3       **F.      No Cause OF Action Exists Under the FCRA For Allegedly
                Accessing Plaintiff's Credit Report For An Impermissible
4               Purpose**

5       Plaintiff further asserts that "Defendants violated the FCRA because they had no legal

6   basis to access and change Plaintiff's Credit Report since the debt was discharged in the

7   bankruptcy and the Formal Dispute Process had already been fully executed."  (*Id*. at ¶ 13.)

8   Plaintiff claims "[t]here was no debtor-creditor relationship at the time the defendant accessed

9   the credit report.  Thus, Defendant accessed Plaintiff's credit report for an impermissible

10  purpose."  (*Id*.)

11      No cause of action exists under the FCRA for allegedly unlawfully <u>accessing</u> a credit

12  report for an impermissible purpose.  Rather, the FCRA imposes civil liability on furnishers of

13  information only if they <u>obtain</u> consumers' credit reports from a credit reporting agency by false

14  pretenses.  *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978); *see also Williams v. AT&T*

15  *Wireless Services, Inc.*, 5 F. Supp. 2d 1142, 1148 (W.D. Wash. 1998).

16      The FCRA imposes civil liability upon credit reporting agencies who unlawfully furnish

17  credit reports to persons who are not entitled to receive them.  Title 15, U.S.C. § 1681b(a) sets

18  forth the permissible purposes of consumer reports.  It provides in pertinent part that

19          any consumer reporting agency may furnish a consumer report under the
            following circumstances and no other:  . . . (3) To a person which it has reason to
20          believe-- (A) intends to use the information in connection with a credit transaction
            involving the consumer on whom the information is to be furnished and involving
21          the extension of credit to, or review or collection of an account of, the consumer;
            or . . . (F) otherwise has a legitimate business need for the information-- (i) in
22          connection with a business transaction that is initiated by the consumer . . . .

23  15 U.S.C. § 1681b(a)(3)(A) & (F).

24      "Because users could be held civilly liable under sections 1681n and 1681o for failing to

25  comply with any 'requirement' under the Act, the Ninth Circuit concluded [in *Hansen*] that a

26  violation of § 1681q formed a basis for civil liability under either 1681n or 1681o."  *Williams*, 5

27  F. Supp. 2d 1142, 1148 (W.D. Wash. 1998).  The Ninth Circuit explained:

28

12

> The principle mechanism for accomplishing [the FCRA's goals] is the regulation of reporting of consumer information by consumer reporting agencies.  But requirements were also placed on users of credit information. This was necessary because the objectives of the act could be defeated is users could obtain information from consumer reporting agencies under false pretenses with impunity.  Even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes.

*Hansen*, 582 F.2d at 1219.

Thus, only "a user who <u>obtains</u> a consumer report under false pretenses may be held civilly liable by the consumer. *Williams*, 5 F. Supp. 2d at 1148 (emphasis added.)  "Stated differently, because §1681b provides the only permissible purposes for issuing a credit report, and the credit reporting agency cannot issue a report for any other purpose, the only way a user can obtain a credit report for impermissible purposes is to misrepresent [to the credit reporting agency] the purpose for obtaining the report." *Mahajan v. Kumar*, No. CV F 06-1728, 2007 WL 1279504, at *5 (E.D. Cal. Apr. 30, 2007) (quoting *Williams*, 5 F. Supp. 2d  at 1148)).  <u>Therefore, "section 1681n does not provide a basis for a separate claim of improper use.</u>" *Id*. at *5, n. 3 (emphasis added).  "In short, to be liable for damages under section 1681q, defendant must have <u>obtained</u> the information knowingly and willfully under false pretenses.  Negligent conduct does not give rise to liability under section 1681q." *Allen v. Calvo*, 1992 WL 391302, at *2 (D. Or. 1992) (citing 15 U.S.C. §§  1681n, 1681o and 1681q; *Rice v. Montgomery Ward & Co.*, 450 F. Supp. 668, 671 (M.D.N.C. 1978);  *Ippolito v. WNS, Inc.*, 864 F.2d 440, 448 n. 8 (7th Cir. 1988), cert. dismissed 490 U.S. 1061 (1989) (emphasis added)); *see also Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 41-42 (E.D.N.Y. 2005) (requesting a credit report when a bank mistakenly believes an account is open does not violate the FCRA).

Plaintiff makes no claim that Defendants:  (1) knowingly and willfully (2) obtained her credit report from a credit reporting agency (3) by false pretenses to the credit reporting agencies.

A credit report is a statutorily defined term.  *See* 15 U.S.C. § 1681a(d).  Under the FCRA, a credit report "does <u>not</u> include-- . . . any-- (i) report containing information solely as to transactions or experiences between the consumer and the person making the report . . . ." 15 U.S.C. § 1681a(d)(2)(A)(i) (emphasis added).  Thus, the FCRA does not consider a furnisher's

13

1    accessing its own tradeline information to be obtaining a credit report, at all.  Indeed, the receipt

2    or provision of such information does not bear on consumers' credit or general character, and it

3    is not used to establish eligibility for credit, employment, or any of the other purposes listed in

4    FCRA.  *Dotzler v. Perot*, 914 F. Supp. 328 (E.D. Mo. 1996), *aff'd,* 124 F.3d 207 (8th Cir. 1997),

5    cert. denied, 522 U.S. 1148, rehearing denied, 523 U.S. 1103 (1998).

6          Accordingly, Plaintiff has  not and cannot state a claim that Defendants violated the

7    FCRA by allegedly accessing Plaintiff's credit report, and this allegation should be dismissed

8    without leave to amend.

9          **G.    No Cause of Action Exists Under the FCRA for Allegedly Re-**
             **aging a Debt By Re-inserting Information On a Consumer's**
10            **Credit Report**

11         Without pleading any supporting facts, Plaintiff concludes that "Defendants further

12   violated the FCRA because they have 're-aged' the debt by re-inserting the [Charge Off]

13   information on the consumer's credit report . . . sometime during 01/2012."  (*Id*. at ¶¶ 12, 15.)

14   No such cause of action exists under the FCRA.  Moreover, the debt could not have been "re-

15   aged" sometime during January of 2012, in fact, because it was discharged in Plaintiff's

16   bankruptcy on August 3, 2010.  (*See* FAC at ¶ 13; RJN, Ex. A, Comp. at ¶¶ 8, 9.)  This claim

17   should be dismissed without leave to amend.

18   **III.    CONCLUSION**

19         For the reasons stated above, Talbots respectfully requests the Court to grant this motion

20   and to dismiss the First Amended Complaint without leave to amend as Plaintiff still has not

21   (after two attempts) stated a legally cognizable claim.

22

23   DATED: June 25, 2012                          SEYFARTH SHAW LLP

24

25                                                By    */s/ Michael J. Burns*
                                                       Michael J. Burns
26                                                Attorneys for Defendant
                                                  THE TALBOTS, INC.

27

28

                                                  14