IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HANKS,<br><br>    Plaintiff,<br><br>  v.<br><br>TALBOTS CLASSICS NATIONAL BANK;<br>THE TALBOTS, INC.,<br><br>    Defendants.<br>                                        / | No. C 12-2612 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

On June 25, 2012, defendant The Talbots, Inc. ("Talbots") filed a motion to dismiss plaintiff Susan Hanks' First Amended Complaint ("FAC"). Plaintiff filed an opposition on July 6, 2012, and defendant replied on July 13, 2012. A hearing was scheduled for the motion on August 3, 2012, but pursuant to Civil Local Rule 7-1(b), the Court found this matter suitable for disposition without hearing. Having reviewed the parties' papers, and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion to dismiss.

**BACKGROUND**

Plaintiff originally filed this action on March 1, 2012 in Sonoma County Superior Court. On May 21, 2012, defendants removed the case to this Court based on both federal question and diversity jurisdiction. *See* Dkt. 1. On May 29, 2012, defendant Talbots[1] filed a motion to dismiss the original

---

[1] According to defendant, Talbots is co-defendant Talbots Classics National Bank's ("TCNB") parent company. *See* Def.'s Mot. to Dismiss ("MTD") at 2. Talbots filed the MTD on behalf of itself only, because TCNB has not been served with process. Nonetheless, it requests that the Court dismiss the complaint against TCNB as well. *Id.* at 1.

complaint. Dkt. 8. In response, plaintiffs filed the FAC, removing all of her claims but one. Talbots thereafter filed the instant motion to dismiss.

Plaintiff brings her claim under the Fair Credit Reporting Act (the "FCRA"). Plaintiff alleges that on April 22, 2010, she filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern California. FAC ¶ 6; *In re: Hanks*, No. 10-11459 (N.D. Cal. Bankr. 20110). The Bankruptcy was concluded and her debts, including the ones at issue here, were discharged. *Id.* Defendants were listed as creditors in plaintiff's bankruptcy and received timely notice of the bankruptcy. FAC ¶ 7.

Plaintiff alleges that "sometime after" the defendant was notified of the plaintiff's bankruptcy case, defendant reported to credit reporting agencies that one or more credit accounts belonging to plaintiff were "charged off." FAC ¶ 8.[2] Plaintiff alleges that this was in violation of the FCRA, because "in fact the account had been included in Plaintiff's Bankruptcy and Defendants were enjoined from reporting said 'Charge Off' on Plaintiffs credit report." *Id.*

Due to these alleged errors in credit reporting, plaintiff sent to the three major credit reporting

---

[2] The parties do not define "Charge Off." Wikipedia provides the following explanation:

> A "charge-off" or chargeoff is the declaration by a creditor (usually a credit card account) that an amount of debt is unlikely to be collected. This occurs when a consumer becomes severely delinquent on a debt. Traditionally, creditors will make this declaration at the point of six months without payment. In the United States, Federal regulations require creditors to charge-off installment loans after 120 days of delinquency, while revolving credit accounts must be charged-off after 180 days.
>
> The purpose of making such a declaration is to give the bank a tax exemption on the debt. Bad debts and even fraud are simply part of the cost of doing business. The charge-off, though, does not free the debtor of having to pay the debt.
>
> A charge-off is one of the most adverse factors that can be listed on a credit report. It will then be listed as such on the debtor's credit bureau reports (Equifax, for instance, lists "R9" in the "status" column to denote a charge-off.) The item will include relevant dates, and the amount of the bad debt.
>
> While a charge-off is considered to be "written off as uncollectable" by the bank, the debt is still legally valid, and remains as such after the fact. The creditor legally has the right to collect the full amount for a time periods permitted the laws of places of the location of the bank and where the consumer resides.

"Charge Off," Wikipedia, *available at* http://en.wikipedia.org/wiki/Charge-off (last visited July 31, 2012).

2

agencies – Trans Union, Equifax, and Experian – letters disputing the "charged off" reporting. FAC ¶ 9. The agencies then forwarded the dispute to defendant.

On October 7, 2011, plaintiff received Experian's reinvestigation report, stating that defendant corrected and removed the "charge off" reporting on her account. The re-investigation report showed the account history to be corrected, "and the trade line account history accurately stopped reporting any and all negative information after March 2010." FAC ¶ 10.[3] Plaintiff alleges that by correcting the inaccurate "charge offs" on her credit report, the defendant "by [its] own admission acknowledged the inaccuracy of the 'Charge Off' status." FAC ¶ 11.

However, on January 22, 2012, plaintiff again pulled her Experian credit report, and found that defendants re-inserted the charge off on the credit report trade line sometime during January 2012. FAC ¶ 12. Defendants also reported a $329.00 balance owed on the trade line account history for every month between April 2010 and December 2011. *Id.* Plaintiff alleges that "because they had no legal basis to access and change plaintiff's credit report since the debt was discharged in the bankruptcy and the Formal Dispute Process had already been fully executed," defendants violated the FCRA by accessing and changing her credit report (FAC ¶ 13); by re-inserting the charge off following its removal (FAC ¶ 14); and by "re-aging" the debt in re-inserting the information on her credit report (FAC ¶ 15).

Plaintiff's original complaint contained claims for alleged violations of the FCRA, Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, Fair Credit Billing Act, 15 U.S.C. § 1601, *et seq.*, California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.30(b), common law defamation, and intentional interference with plaintiff's prospective economic relations. Dkt. 1. Following the filing of defendants' original motion to dismiss, plaintiff withdrew that complaint and filed the FAC, alleging only violations of the FCRA. Defendants argue that plaintiff has still failed to state a claim for relief under the FCRA, and that the FAC should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[3]A "trade line" is the term used to describe information related to a particular account on a credit report. *See* Bankapedia, "What is a trade line?," *available at* http://www.bankapedia.com/mortgage-encyclopedia/faqs/650-what-is-a-tradeline (last visited July 31, 2012).

**LEGAL STANDARD**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court examines the complaint to determine if it states claims upon which relief can be granted. *Gonzalez v. Metropolitan Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999). The Court must take all factual allegations found in the complaint as true and construe them in the light most favorable to the plaintiff. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In order to avoid dismissal for failure to state a claim, the plaintiff has the burden of submitting a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 350 U.S. 544, 555 (2007). Rather, the complaint must contain factual allegations that "raise a right to relief above the speculative level." *Id*.

In the event that the court dismisses a complaint because the plaintiff has failed to meet its burden of pleading, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.* at 1108 (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (alteration in original)). This liberality with which courts are to grant leave to amend is consistent with Rule 15(a)(2)'s requirement that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

**DISCUSSION**

Defendant moves to dismiss the FAC on a number of grounds. Defendant argues that (1) reporting of the "charge off" was accurate and therefore not a violation of the FCRA; (2) the FCRA claim is barred by the Bankruptcy Claim; (3) plaintiff lacks a private right of action for the allegation that defendant inaccurately reported a $329.00 debt; (4) plaintiff lacks a private right of action for the allegation that defendant improperly "accessed" her report; and (5) no cause of action exists under the FCRA for allegedly "re-aging" a debt. Defendant's arguments will be addressed in turn.

**1.     Permissibility of the "charge off"**

Defendant's first argument is essentially two-fold: (1) that the Court can infer from the FAC that

defendant reported the charge off *before* plaintiff's debts were discharged in bankruptcy, and (2) that reporting a charge off after a person declares bankruptcy but *prior* to a discharge is legally permissible under the FCRA. In fact, according to defendant, the FCRA requires it to furnish "complete and accurate" information, and it was merely following its obligations by reporting the charge off. Def.'s MTD at 7 (*citing* 15 U.S.C. § 1681s-a(2)(B)).

With respect to the timing of the charge off, defendant points to the original complaint, in which plaintiff stated that she declared bankruptcy in April 2010, defendant charged off the account as bad debt in or about June 2010, and that she obtained a discharge in bankruptcy on August 3, 2010. RJN, Ex. A (initial complaint) at ¶¶ 8,9. The FAC, however, does not allege that the charge off occurred on any given date; only that it occurred "sometime after" plaintiff declared bankruptcy. Defendant argues that the FAC nonetheless "gives her away." Defendant points to the allegation regarding the re-insertion of the charge off, wherein plaintiff claims that "the re-investigation report showed the trade line account history to be correct, and the trade line account history accurately stopped reporting any and all negative information after March 2010." FAC ¶ 10. Defendant argues the Court can infer from this allegation that the alleged inaccurate charge off information first appeared in her credit reports prior to March of 2010. Def.'s MTD at 8.

The Court disagrees. With respect to plaintiff's initial complaint, "when a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission . . ." *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). Plaintiff's initial allegation regarding the date of the charge off is no longer applicable to her current complaint. With respect to drawing inferences from the allegations in the complaint, it is well established that in deciding on a motion to dismiss, a Court draws all reasonable inferences in plaintiff's favor and construes the pleadings in the light most favorable to the nonmoving party. *Association for Los Angeles Deputy Sherriffs v. Cty. of Los Angeles*, 648 F.3d 986, 996 (9th Cir. 2011). Here, plaintiff alleges that "sometime after defendant was notified of the plaintiff's bankruptcy case, defendant improperly reported to credit reporting agencies that one or more credit accounts belong to plaintiff were charged off . . ." FAC ¶ 8. While the Court may take judicial notice that the bankruptcy discharge occurred on August 3, 2010, it is unclear from that allegation whether defendant charged off plaintiff's account before or after the discharge. As defendant

concedes that plaintiff would state a claim were she to allege that the charge off occurred after her discharge in bankruptcy, the Court finds that by taking all reasonable inferences in plaintiff's favor, she has stated a claim.

The Court therefore need not reach the second question of whether it is legally impermissible under the FCRA or any other statute to charge off an account following a filing for bankruptcy (and the concomitant automatic stay). The Court will address that question, if necessary, when the timeline of plaintiff's allegations becomes clear.

### 2. Whether the FAC is Barred by the Bankruptcy Code

Plaintiff alleges that reporting the charge off was improper after she included it in her bankruptcy filing because "defendants were enjoined from reporting said 'Charge Off' on plaintiff's credit report." FAC ¶ 8. The allegation refers to the discharge injunction a bankrupt receives after discharge under 11 U.S.C. § 524, which states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived . . ." § 524(a)(2). Defendant characterizes plaintiff's allegation as a claim that defendant violated the discharge injunction, and, therefore, it is a "bankruptcy-laden determination" precluded by the Bankruptcy Code. Def.'s MTD at 9. In support of this theory, defendant relies on *Walls v. Wells Fargo Bank*, 276 F.3d 502, 510 (9th Cir. 2002).[4]

The Ninth Circuit in *Walls* held that a plaintiff's claim under § 1692(f) of the Fair Debt Collections Practices Act ("FDCPA") could not be sustained because it turned on whether the discharge injunction of § 524 was violated. *Walls*, 276 F.3d at 510; *see also Henry v. Saxon Mortg., Inc.,* 2011 WL 5331679, at *2-3 (D. Ariz. Nov. 7, 2011). Instead, plaintiff's remedy lied solely in contempt proceedings before the Bankruptcy Court for violation of the discharge injunction. *Walls,* 276 F.3d at

---

[4] Whether the charge-off was first reported before or after plaintiff's discharge is a mystery at this point. As noted earlier, although the original pleading asserted the relevant dates (bankruptcy filing in April 2010, charge-off by Talbots in June 2010 and bankruptcy discharge in August, 2010), the FAC alleges only the date of bankruptcy filing. Plaintiff could, presumably, only claim violation of the discharge injunction if the write-off was reported after discharge.

1 509 (also holding that there is no implied private right of action for violation of § 524 because the
2 Bankrupty Code "has an enforcement mechanism for violations of § 524 via the contempt remedies
3 available under § 105(a)."). The Ninth Circuit concluded that "because Wall's remedy for violation of
4 § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded."
5 *Id.* at 511.

6 Defendant argues that the same holding applies here: that plaintiff cannot circumvent the
7 contempt remedy of the Bankruptcy Code for violation of the discharge injunction by bringing a cause
8 of action under the FCRA. Though *Walls* focused on the FDCPA, defendant argues the same reasoning
9 applies to the FCRA. This issue was addressed in *Henry v. Saxon Mortg., Inc.*, 2011 WL 5331679, *3-4
10 (D. Ariz. Nov. 7, 2011). There, the plaintiffs claimed that the defendant failed to conduct a reasonable
11 investigation pursuant to the plaintiffs' disputes with the major credit reporting agencies. Applying
12 *Walls*, the court dismissed plaintiffs' claims under the FDCPA as "bankruptcy-laden determinations"
13 precluded by the Bankruptcy Code. The court then turned to the plaintiffs' claims under the FCRA:

> Although the Ninth Circuit has not addressed whether *Walls* applies to FCRA claims, this issue has been addressed in the District of Oregon. *See Wakefield v. Calvary Portfolio Servs.*, No. 06–CV–1066–BR, 2006 WL 3169517, at *2 (D.Or. Nov.1, 2006). In *Wakefield*, the court held that the Bankruptcy Code does not preclude an FCRA claim. *Id.* The court cited two bankruptcy court decisions in support of its conclusion. *See In re Miller*, No. 01–02004, 2003 WL 25273851, at *2 (Bankr.D.Idaho Aug.15, 2003) (holding that "there appears to be no conflict in remedies between the FCRA and the [Bankruptcy] Code"); *In re Pots, 336 B.R. 731*, 733 (Bankr.E.D.Va.2005) (holding that the FCRA and the Bankruptcy Code "co-exist"). Therefore, although the Defendant correctly asserts that the above cases are not binding authority, they are persuasive nonetheless and present conclusions that logically follow the purpose of the FCRA. For example, the court in *In re Pots* held that there are two reasons why the Bankruptcy Code and the FCRA can co-exist.
>
> First, while the FCRA and the discharge stay are similar, they are not identical. They differ in their objectives. The FCRA seeks to minimize credit reporting errors and to cure those that are made in a prompt and efficient manner. Actions under it generally involve mistakes. The discharge stay is directed to enforcing the bankruptcy discharge. Actions under it generally involve intentional acts. The elements that must be proved under each statute may overlap, but they are not identical. The remedies available, while similar, may differ. Second, there is no express provision in either the Fair Credit Reporting Act or the Bankruptcy Code that either supercedes the other.
>
> *Id.* These reasons are sufficient to support a finding that the Bankruptcy Code

7

does not preclude an FCRA claim.

2011 WL 5331679, at *3-4.

The Court agrees with that reasoning and adopts it here. Plaintiff is not contending defendant's actions were an attempt to extract payment in violation of the discharge. *See* 11 U.S.C. § 524 (discharge enjoins a creditor from attempting to collect payment). Instead, plaintiff argues that "the only relevance the bankruptcy discharge has in this matter is its effect of rendering the 'charge off' status and report of an ongoing balance inaccurate." Pl.'s Opp. at 8. Complaints about inaccuracy in credit reporting fall within the aegis of the FCRA, and involve distinct inquiries from complaints about violations of the discharge injunction. *See In re: Pots, 336 B.R. 731*, 733 (Bankr.E.D.Va.2005). The Court finds that the FCRA claim is not precluded by the Bankruptcy Code.

### 3. Private Right of Action for $329.00 Debt

Plaintiff alleges that she disputed the initial charge off reporting on her account, and on October 7, 2011, she received Experian's reinvestigation report stating that defendant had corrected and removed the reporting. FAC ¶ 10. However, on January 22, 2012, plaintiff again pulled Experian credit report and found the charge off had been reinserted, along with a reported $329.00 balance owed on the trade line account history for every month between April 2010 and December 2011. FAC ¶ 12.

Defendant argues that plaintiff has no right of action for the allegation regarding the $329.00 because she never disputed that debt; she only disputed the reporting of her account being charged off. Def.'s MTD at 7. Defendant points out that the FCRA provides no cause of action for the duty to provide accurate and complete information and to correct inaccurate and incomplete information, as set forth in Section 1681s-2(a). *See Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1014 (9th Cir. 2009) ("Duties imposed on furnishers under [Section 1681s-2(a)] are enforceable only be federal or state agencies."). Section 1681s-2(b) of the FCRA, on the other hand, imposes a duty upon those who furnish information to credit reporting agencies to conduct an investigation upon notice from a credit reporting agency that a consumer has disputed the accuracy or completeness of their reported information, and does provide for a cause of action for "willful or negligent noncompliance with its requirements." *Gorman*, 584 F.3d at 1154 ("§ 1681s-2 limits this private right of action to claims arising under

8

subsection (b)."). Therefore, according to defendant, because plaintiff did not specifically dispute the $329.00 debt, she has no cause of action to bring her claim with respect to it.

The Court disagrees. Plaintiff is not alleging that the $329.00 debt appeared in a vacuum. Plaintiff requested an investigation with respect to the initial reporting of the charge off; defendant removed the reported charge off; and then, sometime later, defendant re-inserted the charge off report, along with a $329.00 running balance. FAC ¶¶ 10-12. Assuming the inaccuracy of the initial charge off, as the Court must at this stage, it would be incongruous for the FCRA to prohibit the reinsertion of the inaccurate information but allow the simultaneous insertion of a new, inaccurate running balance. The Court finds that plaintiff's allegation regarding the running balance falls within the cause of action allowed by § 1681s-2(b).

### 4. Private Cause of Action for "Accessing" Plaintiff's Credit Report

Plaintiff alleges that "defendants violated the FCRA because they had no legal basis to access and change plaintiff's credit report since the debt was discharged in the bankruptcy and the Formal Dispute Process had already been fully executed." FAC ¶ 13. Plaintiff claims that "[t]here was no debtor-creditor relationship at the time the defendant accessed the credit report. Thus, Defendant accessed Plaintiff's credit report for an impermissible purpose." *Id.*

Defendant argues that no cause of action exists under the FCRA for allegedly unlawfully *accessing* a credit report for an impermissible purpose. "Rather, the FCRA imposes civil liability on furnishers of information only if they *obtain* consumers' credit reports from a credit reporting agency by false pretenses." Def.'s MTD at 12 (*citing Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978)). Furthermore, defendant argues, under the FCRA, the definition of a credit report "does not include . . . any report containing information solely as to transactions or experiences between the consumer and the person making the report . . ." 15 U.S.C. § 1681a(d)(2)(A)(i). Thus, according to defendant, the FCRA does not consider a furnisher accessing its own tradeline information to be "obtaining a credit report" at all.

The Court agrees that plaintiff has failed to state a claim with respect to the allegation that defendant impermissibly "accessed" her report. It is true, as plaintiff points out, that the FCRA limits

9

the circumstances under which a person may obtain a consumer's credit report. *See* 15 U.S.C. § 1681b(f) (for example, allowing a person to obtain reports where he "(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . .). However, it contains no such limitations with respect to a creditor accessing its own trade line information, which on its own does not constitute a consumer credit report. *See* 15 U.S.C. § 1681a(d)(2)(A)(i). Because it cannot be cured by amendment, plaintiff's allegations regarding "accessing" her report is hereby DISMISSED WITHOUT LEAVE TO AMEND.

### 5. Private Cause of Action for Re-Aging a Debt

Plaintiff alleges that the defendants violated the FCRA "because they have 're-aged' the debt by re-inserting the information on the consumer's credit report." FAC ¶ 15. Defendant argues no such cause of action exists under the FCRA. Def.'s MTD at 14. Plaintiff offers no opposition to this argument. The Court agrees with defendant that no such cause of action exists within the FCRA. That claim, as set forth in FAC ¶ 15, is hereby DISMISSED WITHOUT LEAVE TO AMEND.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. The Court GRANTS defendant's motion to dismiss FAC ¶¶ 13 and 15 for failure to state a claim. The Court otherwise DENIES defendant's motion.

**IT IS SO ORDERED.**

Dated: J August 6, 2012

SUSAN ILLSTON
United States District Judge